DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br>vs.<br><br>ACME UNIVERSAL, INC., a corporation, and XIN BO "PAUL" YU, an individual,<br><br>Defendants. | CIVIL CASE NO. 12-00008<br><br>**ORDER & OPINION RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Before the court is the Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") filed by Defendants Acme Universal, Inc. and Xin Bo "Paul" Yu (collectively "Defendants"). *See* ECF No. 66. On March 31, 2014, the parties appeared before the court for a hearing on the Motion and rested on the briefs. After reviewing the parties' briefs, and relevant caselaw and authority, and having heard argument from counsel on the matter, the court hereby **DENIES** the Motion for the reasons stated herein.

**I.    CASE OVERVIEW**

**A.  Factual Background**

Defendants operate a construction company in Harmon, Guam, and employed at least sixteen employees during the period at issue in the instant action. Mem. of P. & A. in Supp. of

Pl.'s Mot. for Protective Order & Inj. Relief at 3, ECF No. 27-1. These employees were recruited from China through the H-2B program, which provides for the admission of temporary nonimmigrant aliens to perform temporary nonagricultural labor or services in the United States. *Id*. In April 2011, the U.S. Department of Labor's Wage and Hour Division investigators conducted an investigation into Defendants' employment practices. *Id*. at 6.

### B. Procedural Background

On May 16, 2012, the Secretary of Labor ("Secretary") commenced the instant action by filing the complaint. *See* ECF No. 1. On September 14, 2013, the Secretary filed the Second Amended Complaint ("SAC"), alleging that Defendants willfully failed to (1) pay minimum wage, (2) pay overtime premiums, and (3) make, keep, and preserve adequate and accurate records, in violation of the Fair Labor Standards Act ("FLSA" or "Act"). *See* ECF No. 64. The Secretary also alleges that Defendants retaliated against employees who they believed spoke to the Secretary and that Defendants obstructed the Secretary's investigation.

On October 18, 2013, Defendants moved the court to dismiss the retaliation claim in the SAC because the Secretary failed to sufficiently allege each element of the claim. *See* ECF No. 66. The Secretary filed the Opposition on November 15, 2013, and Defendants filed the Reply on November 29, 2013. *See* ECF Nos. 69, 71. The parties stipulated to supplemental briefing to further assist the court in this matter. *See* ECF No. 75. Thereafter, the Secretary filed the Sur-Opposition on February 8, 2014, and Defendants filed the Sur-Reply on March 3, 2014. *See* ECF Nos. 77, 78.

## II. **JURISDICTION AND VENUE**

Jurisdiction is proper pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 216, 217, and 28 U.S.C. § 1331.

Venue is proper in this judicial district, the District of Guam, because Defendants conduct business here, and because all of the events or omissions giving rise to the Secretary's claims occurred here. *See* 28 U.S.C. § 1391.

### III. APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that, in response to a claim for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. FED. R. CIV. P. 12(b)(6). Whether a party has sufficiently stated a claim for relief is viewed in light of Federal Rule of Civil Procedure 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to Rule 8, a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard under Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). The court must engage in a two-step procedure to determine the plausibility of a claim. *Id*. at 678–79. First, the court must weed out the legal conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id*. at 678. Second, the court should presume the remaining factual allegations are true and determine whether the claim is plausible. *Id*. at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678

(citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" to determine the plausibility of a claim given the specific context of each case. *Id*. at 679.

## IV. DISCUSSION

### A. Retaliation Claim Under the Fair Labor Standards Act

In the SAC, the Secretary claims that Defendants have violated and are violating the FLSA, which provides in pertinent part:

> [I]t shall be unlawful for any person…to discharge in or any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3).

To establish a prima facie case of retaliation under the FLSA, the Secretary must demonstrate the following elements: (1) the employee must have engaged in statutorily protected conduct under § 215(a)(3), or the employer must have erroneously believed that the employee engaged in such conduct; (2) the employee must have suffered some adverse employment action; and (3) a causal connection must exist between the employee's conduct and the adverse action. *Mayes v. Kaiser Foundation Hospitals*, 917 F. Supp. 2d 1074, 1080 (E.D. Cal. 2013).

#### 1. Protected Activity

Defendants contend that the first element of the retaliation claim has not been properly pled because "the SAC fails to allege that employees of Defendants made complaints about FLSA violations or that the employees of Defendants sought to or did provide testimony regarding FLSA violations in proceedings." Defs.' Mot. at 12, ECF No. 66. The Secretary asserts that Defendants' narrow interpretation of what constitutes "protected activity" contradicts the Supreme Court's reiteration in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), that the FLSA should be interpreted broadly. Pl.'s Opp'n at 2–3, ECF No. 69.

- 4 -

The statutory language of the FLSA protects an employee who "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). In *Kasten*, the Supreme Court held that the FLSA's statutory term "filed any complaint" includes oral as well as written complaints within its scope. 131 S. Ct. at 1329. The Court based its decision on "the Act's 'remedial and humanitarian… purpose' [which] cautions against 'narrow, grudging' interpretations of its language." *Id*. at 1334 (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). The Court also considered its previous decision broadly interpreting the National Labor Relations Act ("NRLA") in *NLRB v. Scrivener*, 405 U.S. 117 (1972).

As *Kasten* did not directly address the alleged protected activity at issue here (i.e., speaking and cooperating with the Secretary), the Court's reference to *Scrivener* is instructive. The *Kasten* Court acknowledged the similar enforcement needs of the NRLA and the FLSA, which rely upon "information and complaints received from employees seeking to vindicate rights claimed to have been denied" rather than direct federal supervision. 131 S. Ct. at 1333 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).

In *Scrivener*, the Court interpreted § 8 of the NLRA, which provides that "[i]t shall be an unfair labor practice for an employer…to discharge or otherwise discriminate against an employee because he has *filed charges or given testimony* under this Act." 29 U.S.C. § 158(a)(4) (emphasis added). The conduct at issue was an employer's retaliatory discharge of an employee who had submitted a sworn written statement to a National Labor Relations Board ("Board") field examiner investigating an unfair labor practice charge filed against the employer, but who had not filed the charge or testified at a formal hearing on it. *Scrivener*, 405 U.S. at 118.

The Court found that the employee's action was protected activity and that the employer violated the antiretaliation provision by discharging him. *Scrivener*, 405 U.S. at 124. The Court reasoned:

> This interpretation, in our view, also squares with the practicalities of appropriate agency action. An employee who participates in a Board investigation may not be called formally to testify or may be discharged before any hearing at which he could testify. His contribution might be merely cumulative or the case may be settled or dismissed before hearing. Which employees receive statutory protection should not turn on the vagaries of the selection process or on other events that have no relation to the need for protection. It would make less than complete sense to protect the employee because he participates in the formal inception of the process (by filing a charge) or in the final, formal presentation, but not to protect his participation in the important developmental stages that fall between these two points in time. This would be unequal and inconsistent protection and is not the protection needed to preserve the integrity of the Board process in its entirety.

*Id.* at 123–24. In *Kasten*, the Court described the *Scrivener* decision as "broadly interpret[ing] the language of the NLRA's antiretaliation provision—'filed charges or given testimony,' 29 U.S.C. § 158(a)(4)—as protecting workers who *neither* filed charges *nor* were 'called *formally* to testify' but simply 'participate[d] in a [National Labor Relations] Board investigation.'" 131 S. Ct. at 1334 (last alteration in original) (quoting *Scrivener*, 405 U.S. at 123).

Based upon the broad interpretation approach established by the Supreme Court in *Tennessee Coal* and reaffirmed in *Kasten*, an employee's participation in the Secretary's investigation constitutes protected activity under the FLSA. This conclusion is further supported by the *Scrivener* Court's interpretation of the NLRA's comparable antiretaliation provision. This conclusion also is consistent with the purpose of the FLSA's antiretaliation provision—"to ensure that 'fear of economic retaliation' not 'operate to induce aggrieved employees quietly to accept substandard conditions.'" *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc) (quoting *Mitchell*, 361 U.S. at 292).

The SAC alleges:

> Defendants contacted immigration authorities who detained one employee whom Defendants *believed spoke to the Secretary*. Defendants told current and prospective employers not to hire employees that Defendants *believed spoke to the Secretary*….Defendants also contacted the family members in China of employees that Defendants *believed have spoken to the Secretary*, and threatened punishment if the employees did not withdraw their cooperation.

SAC ¶ 11, ECF No. 64 (emphasis added). Even if an employee has not engaged in protected activity, an employer's mistaken belief that the employee filed a complaint or engaged in other protected activity is sufficient to bring the employer's conduct within § 215(a)(3). *See Saffels v. Rice*, 40 F.3d 1546, 1548–50 (8th Cir. 1994); *Brock v. Richardson*, 812 F.2d 121, 123–25 (3d Cir. 1987).

Taking the allegations of the SAC as true, as the court must at this stage of the proceeding, the court can reasonably infer that Defendants acted based on their belief that employees spoke to the Secretary, which constitutes protected activity. Accordingly, the Secretary has sufficiently pleaded the first element of the retaliation claim.

### 2. Adverse Employment Action

#### a. *Lambert v. Ackerley*

Defendants assert that pursuant to the Ninth Circuit's en banc decision in *Lambert v. Ackerley*, the court should not rely on Title VII caselaw when determining what constitutes an adverse employment action under the FLSA antiretaliation provision. *See* Defs.' Reply at 7, ECF No. 71; Defs.' Sur-Reply at 6, ECF No. 78.

The issue addressed by the Ninth Circuit in *Lambert* was whether the antiretaliation provision of the FLSA protects employees who complain about wage and hour violations to their employers rather than file formal proceedings with the Department of Labor or in federal court. 180 F.3d at 1001. The Ninth Circuit held that the antiretaliation provision did protect employee

complaints to employers, and found that such an interpretation comported with the purpose of the Act. *Id*. at 1004.

The *Lambert* majority compared the Title VII and FLSA antiretaliation provisions in response to the defendants' argument, supported by a Second Circuit decision, that while Title VII's broader statutory language may encompass complaints to employers, the FLSA does not. *Id*. at 1005. Title VII's antiretaliation provision provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The Second Circuit held that although the phrase "opposed any practice" in the Title VII antiretaliation provision encompasses employee complaints to supervisors, the plain language of the FLSA antiretaliation provision does not encompass such complaints. *Lambert v. Genessee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993).

The Ninth Circuit disagreed:

> With all due respect to the Second Circuit, we disagree that the breadth of Title VII's anti-retaliation provision dictates the construction we should give the FLSA provision. The FLSA was drafted some sixty-two years ago, at a time when statutes were far shorter and less detailed, and were written in more general and simpler terms. The fact that Congress decided to include a more detailed anti-retaliation provision more than a generation later, when it drafted Title VII, tells us little about what Congress meant at the time it drafted the comparable provision of the FLSA. In short, we find the view suggested by the defendants—that Congress' choice of words in 1964 can resolve the meaning of words chosen in 1937—to be unpersuasive.

180 F.3d at 1005.

The *Lambert* majority did not issue a blanket rejection of employing Title VII caselaw to construe the FLSA. Rather, the court held that Title VII's more expansive language *with respect to protected activity* ("opposed any practice made an unlawful employment practice by this subchapter") should not require the courts to construe the FLSA in a more narrow and restrictive

- 8 -

fashion. Accordingly, *Lambert* does not stand for the proposition that courts are prohibited from considering Title VII cases when determining what constitutes an adverse employment action under the FLSA antiretaliation provision.

### b. Definition

With respect to the second element of a retaliation claim under the FLSA, the Title VII and FLSA antiretaliation provisions are substantially identical: Under the FLSA, the pertinent statutory language is "to discharge or in any other manner discriminate against any employee." 29 U.S.C. § 215(a)(3). Under Title VII, the pertinent statutory language is "to discriminate against any of his employees." 42 U.S.C. § 2000e-3(a).

In a recent Ninth Circuit opinion, the court relied on *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), a Title VII case, to define an adverse employment action with respect to an FLSA retaliation claim because the "Title VII antiretaliation provision…is substantially identical to FLSA antiretaliation provision." *McBurnie v. City of Prescott*, 511 F. App'x 624, 625 (9th Cir. 2013). Specifically, the Ninth Circuit stated that "[a]n action taken by an employer is retaliatory if 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a' FLSA complaint." *Id.* (quoting *Burlington*, 548 U.S. at 68). The Fourth Circuit has taken a similar approach. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (finding an "almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes" and "no significant differences in either the language or intent of" Title VII and FLSA "regarding the type of adverse action their retaliation provisions prohibit").

In *Burlington*, the Supreme Court addressed the reach of the phrase "discriminate against" in Title VII's antiretaliation provision. 548 U.S. at 57. The Court opined that the

antiretaliation provision is not confined to employer actions that are related to employment or occur at the workplace. *Id*. at 67. Rather, the provision covers "employer actions that would have been materially adverse to a reasonable employee or job applicant…. mean[ing] that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*.

The court finds the reasoning of *McBurnie* and *Darveau* to be persuasive. Accordingly, the court finds that the FLSA antiretaliation provision covers an employer action if "'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a' FLSA complaint." *McBurnie*, 511 F. App'x at 625 (quoting *Burlington*, 548 U.S. at 68).

### c. Retaliatory Acts at Issue

The Secretary alleges the following retaliatory acts in the SAC: (1) threatening employees with discharge, deportation, and forfeiture of the employees' security deposit (taken out of their wages); (2) contacting immigration authorities, who detained one employee Defendants believed spoke to the Secretary; (3) contacting current and prospective employers and telling them not to hire the employees Defendants believed spoke to the Secretary; (4) approaching former employees at their current places of employment and threatening them into not speaking with the Secretary; (5) threatening employees to not cooperate with the Secretary "for the sake of their family"; and (6) contacting and threatening the families of the employees Defendants believe spoke with the Secretary. SAC ¶ 11, ECF No. 64.

With respect to contacting immigration authorities, a number of district courts have held that reporting an employee to immigration authorities with a retaliatory motive constitutes prohibited conduct under § 215(a)(3). *See Montano-Perez v. Durrett Cheese Sales, Inc.*, 666 F. Supp. 2d 894, 901–02 (M.D. Tenn. 2009); *Centeno-Burney v. Perry*, 302 F. Supp. 2d 128, 136

(W.D.N.Y. 2003); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002); *Contreras v. Corinthia Vigor Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180, 1185 (N.D. Cal. 2000). With respect to contacting current and prospective employers in an effort to "blacklist" former employees, courts have recognized such conduct as retaliatory. *See Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir. 1977); *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 103–04 (E.D. Tenn. 1979). With respect to threats or acts of physical violence, the Ninth Circuit has found that such behavior can be a violation of § 215(a)(3). *Ford v. Alfaro*, 785 F.2d 835, 841–42 (9th Cir. 1986) (citing cases dealing with analogous sections of the National Labor Relations Act).

Taking the allegations of the SAC as true, as the court must at this stage of the proceeding, the court can reasonably infer that Defendants' actions would have dissuaded a reasonable employee from making or supporting an FLSA complaint. Accordingly, the Secretary has sufficiently pleaded the second element of the retaliation claim.

### 3. Causal Connection

Although Defendants contend that no causal links have been alleged, the SAC alleges that all the adverse actions taken by Defendants were motivated by their belief that the employees were speaking to or otherwise cooperating with the Secretary. Taking the allegations of the SAC as true, as the court must at this stage of the proceeding, the court can reasonably infer that there is a direct causal connection between the employees' protected activity and Defendants' actions. Accordingly, the Secretary has sufficiently pleaded the third element of the retaliation claim.

## B. Government Informant Privilege

Defendants assert that the "SAC is in fact devoid of specific factual allegations. The employees who allegedly engaged in protected activity are unnamed. The protected activity they

alleged engaged in is not described. We don't know when or where or how as to any allegation." Defs.' Mot. at 17, ECF No. 66. The Secretary contends that pursuant to the informer's privilege, he is not required to provide the victims' identity at this stage of the proceeding. Pl.'s Sur-Opp'n at 8, ECF No. 77. The Secretary argues that the information in the SAC "is more than sufficient to give Defendants fair notice of the factual bases underlying the Secretary's allegations of retaliation, even without naming the specific employees victimized by Defendants." *Id*. However, Defendants contend that the Secretary has not properly invoked the privilege. Defs.' Reply at 18, ECF No. 71.

The Ninth Circuit has recognized that "[i]n FLSA actions brought by the Secretary of Labor, the 'informant's privilege' may be used to conceal the names of employees who precipitated the suit by filing complaints with the Department of Labor." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000). There is no requirement under § 215(a)(3) that employees who are the object of retaliation be named in the complaint, and, as discussed above, the SAC sufficiently pleads a retaliation claim under the FLSA. Therefore, it is not necessary for the court to determine whether the informant's privilege was properly invoked in order to make a decision on the Motion to Dismiss.

## V.  CONCLUSION

Based on the foregoing, the court hereby **DENIES** the Motion to Dismiss Plaintiff's Second Amended Complaint. A status conference to set new pretrial deadlines and a trial date shall be held as scheduled by the Magistrate Judge.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    Chief Judge
Dated: Apr 08, 2014

- 12 -