DISTRICT COURT OF GUAM

TERRITORY OF GUAM

**SETH D. HARRIS, Acting Secretary of Labor, United States Department of Labor,**

Plaintiff,

vs.

ACME UNIVERSAL, INC., a corporation, **and XIN BO "PAUL" YU, an individual,**

Defendants.

CIVIL CASE NO. 12-00008

ORDER

The court heard Plaintiff's Motion for Protective Order (ECF No. 27) and Motion to Modify Protective Order and Injunctive Relief (ECF No. 45) on July 11, 2014. At the conclusion of the hearing, the court took the matter under advisement. Having reviewed the motions and pleadings associated therewith, the court now issues its decision.

**BACKGROUND**

This action asserts violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.[1] The Plaintiff alleges that Defendants violated the FLSA by failing to pay its employees the minimum wage, failing to pay overtime for work in excess of 40 hours per week, and failing to maintain accurate records of hours worked. *See* SAC at ¶¶7-9, ECF No. 64. Additionally, the

---

[1] The Complaint was filed on May 16, 2012, *see* ECF No. 1, without objection the Plaintiff filed a First Amended Complaint on May 10, 2013, *see* ECF No. 47, and a Second Amended Complaint ("SAC") was filed on September 14, 2013. *See* ECF No. 64.
  Attached to the Complaint and the SAC was a list that contained the names of 16 persons who were formerly employed by Acme and allegedly under-compensated by the Defendants.

Plaintiff alleges the Defendant retaliated, threatened or discriminated against employees whom the Defendants believed cooperated with or was cooperating with the Secretary and that such actions obstructed the Plaintiff's investigation into the Defendants' compliance with the FLSA. *Id.* at 11-12.

Defendant Acme Universal, Inc. ("Acme") was engaged in the residential construction business from 2007 to about 2012 but is essentially inactive. Opp'n to Mot. for Protective Order at 2, ECF No. 37. Defendant Xin Bo "Paul" Yu is the President of Acme. *Id.* Acme employed H2 workers from China and, at its height, had about 16 full time employees. *Id.*

The Plaintiff's investigation into the Defendants' employment practices began back in April 2011. *See* Mem. P.&A. Supp. Mot. for Protective Order at 6, ECF No. 27-1, and Decl. D. Tamondong at ¶11, ECF No. 27-2. The Defendants allegedly told its employees to leave the premises so they could not be interviewed by Department of Labor investigators. *See* Mem. P.&A. Supp. Mot. for Protective Order at 6, ECF No. 27-1. Employees were allegedly also prewarned to say they worked 40-hour weeks and earned $11.34 an hour if questioned by government officials. *Id.* Based on information obtained from confidential informants and Jian Zhu, a foreman at Acme, the Plaintiff alleged the Defendants mistreated their employees from the start of their employment and continued well after the employees left, including:

1. requiring the employees to pay a fee of 40,000 RMB (or about $6,400) to a recruiting company used by Mr. Yu;

2. collecting a 50,000 RMB (about $8,000) security deposit from the employees through monthly deductions from their pay, with the condition that this security deposit would be forfeited if the employees disobeyed or broke any rules set by the employer, did anything detrimental to the employer's interests, or exposed any company confidential matter;

3. confiscating employees' passports and other travel documents;

4. requiring H-2B employees to live in a barracks surrounded by barbed wire and owned by Mr. Yu, and restricting the employees' ability to come and go as they pleased;

5. requiring the employees to work from 7 am to 6 pm daily, with a reprieve only for Chinese New Year or when the weather was too inclement;

///

///

      6.      paying the employees below the minimum wage and the prevailing wage required by the guest worker program;[2]

      a.      paying employees every six months instead of monthly; and

      b.      making employees sign false time sheets reflecting that they only worked 40 hours each week.

*Id.* at 4-5.

After the Plaintiff filed this action on May 16, 2012, it is alleged that Mr. Yu contacted some of his former H-2B employees and urged them to withdraw any complaints filed with the Plaintiff and cease their cooperation with the investigation and lawsuit. *See* Mem. P.&A. Supp. Mot. for Protective Order at 6, ECF No. 27-1. Confidential informants reported that Mr. Yu offered some employees money if they left Guam and also threatened their families who were in China. *Id.* Finally, the Plaintiff received reports that Mr. Yu coerced some former employees to sign statements they did not draft containing false statements about their working conditions. *Id.* at 7.

On January 25, 2013, the Defendants served the Plaintiff with a Second Set of Requests for Production, which sought documents and contact information for four former employees of Acme.[3] *See* Decl. J. Lake in Supp. of Appl. to Shorten Time at ¶3, ECF No. 28-1. The Plaintiff refused to disclose any information that may reveal the identities of the government's confidential informants. When the Plaintiff was alerted in late February that the Defendants intended to notice the depositions of these individuals, Plaintiff's counsel (Joseph Lake) sent

---

[2] It is alleged that the employees were paid $3 per hour for the first six months of employment, $4 per hour for the next six months, and then $5 per hour for the remainder of their contract, with an additional $1 per hour for any hour worked over ten hours in one day.

[3] The Defendants' Second Set of Requests for Production sought information about the following four individuals, who are also listed amongst the 16 names in Exhibit A to the Complaint and the SAC:
    1.    Li, Hai Feng
    2.    Liu, Qi Hong
    3.    Qin, Long Shen
    4.    Wu, Guang Jin
See Ex. A to Decl. J. Lake in Supp. of Appl. to Shorten Time at ¶3, ECF No. 28-1.

defense counsel an email advising that the Plaintiff would seek a protective order from the court. *Id.* at ¶4.

On March 1, 2013, the Defendants noticed the depositions of the four individuals for March 19 and 20, but later re-noticed these depositions for March 21 and 22, 2013. *Id.* at ¶8.

This action prompted the Plaintiff to file the instant Motion for Protective Order, seeking to prohibit the Defendants from inquiring into matters the Plaintiff believed was protected by the government informant privilege. Additionally, the Plaintiff believed that this litigation would be irreparably harmed if the Defendant (specifically Mr. Yu) were permitted to continue to engage in harassing, intimidating and coercive tactics against former employees or their families. Thus, the Plaintiff also filed an *Ex Parte* Motion to Shorten Time, *see* ECF No. 28, and asked the court to "act with all deliberate speed" in hearing and ruling upon the Motion for Protective Order, or, in the alternative, to stay the scheduled depositions while the Motion for Protective Order was heard. *Id.*

The court eventually denied the motion to shorten time and the request to stay the depositions. Instead, pending a final ruling on the Motion for Protective Order, the court issued a Temporary Protective Order, setting in place certain conditions that the Plaintiff requested and the Defendants agreed to on a temporary basis.[4] *See* Temporary Protective Order, ECF No. 31.

---

[4] These conditions were as follows:

1. In connection with discovery proceedings in this action, the Plaintiff will not provide and the Defendants will not seek information privileged under the government informant privilege. Specifically:
   a. The Secretary will not answer the Defendants' Second Set of Requests for Production of Documents to the Plaintiff or produce any documents the Plaintiff may have that are responsive to those requests.
   b. The Defendants are prohibited from asking any current or former employee, either directly or indirectly, whether they spoke to an agent of the U.S. Department of Labor or whether they gave a statement to an agent of the Department of Labor prior to the deposition. Should the Defendants inquire whether the deposition witness communicated the subject matter of this case with anyone, the Defendants must begin the inquiry by stating "With the exception of any agent of the U.S. Department of Labor."
   c. The Defendants may not inquire into the content of any speech or statement

given to an agent of the Department of Labor prior to the deposition.

d. The Defendants shall not inquire of any current or former employee whether that employee complained to the Department of Labor regarding minimum wage or overtime claims, nor shall the Defendants inquire into the content of any such complaint. Nothing in this Order prohibits the Defendants from deposing any current or former employee about their conditions of employment at Acme Universal, Inc., including hours worked and rate of pay.

2. The Defendants, or persons acting on their behalf, will read the Court's Notice of Rights on the record at the commencement of each deposition of any individual listed on Exhibit A to the Plaintiff's Complaint the following:

*You are protected by the Fair Labor Standards Act and have the right to participate freely in the lawsuit that the U.S. Government has brought against the Defendants Mr. Yu and Acme Universal, Inc. The U.S. District Court, via the Honorable Joaquin V.E. Manibusan, Jr., has ordered Mr. Yu, Acme Universal, the managers of Acme Universal and anyone acting on Mr. Yu's or Acme's behalf to cease coercing, retaliating against, intimidating or attempting to influence or in any way threatening the employees or former employees of Acme Universal in any way for providing information to the Department of Labor or giving testimony, including at this deposition. The Court has barred Mr. Yu, the managers of Acme Universal, or anyone acting on their behalf from contacting or communicating with any current or former employees regarding this lawsuit or any testimony any employee may give regarding Mr. Yu's and Acme Universal's failure to pay the full wages promised timely as required by federal law.*

*The lawsuit brought by the U.S. Department of Labor also seeks relief from retaliation by Mr. Yu, the managers of Acme Universal and Acme Universal, including reports from employees of unlawful threats of deportation, or threats made to employees' families or current employers.*

*If Acme Universal, Mr. Yu or anyone acting on their behalf, approached you, your family members, or current employer in China or Guam to secure a statement from you regarding this litigation, you have a right to be free of any coercion from Mr. Yu and Acme Universal. Any statement you signed as a result of such coercion, intimidation or threatening contacts will be disregarded by the Court and will not be considered as evidence in these proceedings. The Court reminds you that you have a right to testify truthfully free of coercion and you should not be concerned, intimidated or restrained by any statement Mr. Yu or Acme secured from you previously under coercive circumstances.*

3. The Defendants, and anyone acting on their behalf, are prohibited from any contact with the individuals listed on Exhibit A to Plaintiff's Complaint, except through the Defendants' attorneys and only for the purpose of arranging or taking depositions of the listed individuals. The Defendants, and anyone acting on their behalf, are prohibited

On May 2, 2013, the Plaintiff then filed a Motion to Modify Protective Order and Injunctive Relief. The Plaintiff believed that the current Temporary Protective Order did not allow the former employees to testify in these proceedings without fear or coercion or retaliation from the Defendants, especially in light of additional evidence obtained by the Plaintiff of Mr. Yu's alleged efforts to intimidate witnesses to block this litigation.

The court originally scheduled a hearing on the two motions for May 15, 2013. However, pursuant to the stipulation of the parties, the May 15th hearing was later continued to allow the Plaintiff to file the First Amended Complaint and then the SAC, and thereafter to permit the Chief Judge to rule on the Motion to Dismiss the SAC. After the Chief Judge denied the Motion to Dismiss, *see* ECF No. 82, the court ordered the parties to complete the briefing on the Motion to Modify Protective Order and then set this matter for hearing.

## ANALYSIS

**Motion for Protective Order and Injunctive Relief**

The Plaintiff requests this court issue a protective order and preliminary injunction pursuant to 29 U.S.C. § 215(a)(3)[5] (the FLSA's anti-retaliation provision) and Rules 26(c)[6] and

---

from contacting the current employers or the family members of individuals listed on Exhibit A to the Plaintiff's Complaint. Any communication between the Defendants' counsel and the individuals listed on Exhibit A to the Plaintiff's Complaint shall include a copy of this Court's Notice of Rights as set forth in Paragraph 2 above. Further, the Defendants, and anyone acting on their behalf, will not communicate in any way with former employees of the Defendants not listed on Exhibit A about the individuals on Exhibit A to the Plaintiff's Complaint, the Defendants' business and employment practices as it relates to those individuals, or any aspects of this suit brought by the United States Department of Labor.

4. The Defendants will not use in the process of discovery, in any motion the Defendants may file, and in the trial in this case any statements it has secured prior to the entrance of this Order from any of its former employees, including any of the individuals listed on Exhibit A to the Plaintiff's Complaint, in any manner.

[5] This statute makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted

65(d) of the Federal Rules of Civil Procedure. Although it appeared that a discovery dispute prompted the filing of the original Motion for Protective Order, the Plaintiff states that he is not seeking an injunction "to secure protection from any discovery demand," but rather "to protect and ensure the integrity of this judicial system by addressing the alarming concerns of intimidation and retaliation reported by witnesses to the unlawful acts at the heart of [this] case – a harm far more grave than a simple discovery demand." Reply at 3, ECF No. 44.

A. <u>Preliminary Injunction</u>

Both parties agree that the Ninth Circuit recognizes two approaches to the *Winter* test, which determines when a preliminary injunction can be issued – the traditional and the "serious questions" approach. *See* Mem. P.&A. Supp. Mot. for Protective Order at 9, ECF No. 27-1; Opp'n Mot. for Protective Order at 15-16, ECF No. 37. The Supreme Court has held that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

---

or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. §215(a)(3).

[6] In pertinent part, this rule provides:
(c) Protective Orders.
(1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
    (A) forbidding the disclosure or discovery;
    (B) specifying terms, including time and place, for the disclosure or discovery;
    (C) prescribing a discovery method other than the one selected by the party seeking discovery;
    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
    (E) designating the persons who may be present while the discovery is conducted;

. . .

Fed. R. Civ. P. 26(c).

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). In addition to the conventional *Winter* test, the Ninth Circuit has established a "serious questions" approach wherein "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011)).

The Plaintiff argues that he meets all four elements of the *Winter* test: (1) he is likely to prevail on the claim of retaliation because confidential informants have reported that the Defendants have attempted to intimidate, threaten and coerce employees who cooperated with the investigation; (2) Plaintiff will suffer irreparable harm if an injunction is not entered because the Defendants will be able to discourage, bribe, or threaten witnesses, preventing the Plaintiff from presenting said witnesses to demonstrate how and to what extent FLSA was violated; (3) the balance of equities tilts sharply in the Plaintiff's favor and entering the preliminary injunction is in the public interest because the Plaintiff is simply requesting the Defendants comply with the FLSA's anti-retaliation provision and ensure that all third-party witnesses are able to participate freely in this litigation. Accordingly, the Plaintiff contends the preliminary injunction should issue to restrain the Defendants from further retaliation.

Conversely, the Defendants argue that the Plaintiff cannot satisfy any of the elements: (1) Plaintiff is not likely to prevail on the merits of the retaliation claim because the Plaintiff did not plead a retaliation claim in the Complaint;[7] (2) neither the Plaintiff nor the H-2B employees are likely to suffer irreparable harm because the alleged harmful behavior all took place one year ago and there is no indication that such action is continuing; (3) the balance of hardships tips in the

---

[7] This argument has since become moot because the Plaintiff brought a retaliation claim in the SAC.

Defendants' favor because a lack of injunction will not harm Plaintiff, but instead will prevent or make it extremely difficult for the Defendants to prepare their defense in this case; and (4) the public has an interest in fair trials, and the injunction sought will prevent a fair trial.

### 1. Likelihood of Success on the Merits

The first element of the *Winter* test requires the plaintiff to demonstrate either likelihood of success on the merits, or serious questions going to the merits. The Ninth Circuit has described "serious questions" in conflicting ways. For example, it has stated that "serious questions are those 'which cannot be resolved one way or the other at the hearing on the injunction;' they need not promise a certainty of success, nor even present a probability of success." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 926-27 (9th Cir. 2003) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Alternatively, the Ninth Circuit has also "characterized a 'serious question' as one as to which the moving party has 'a fair chance of success on the merits.'" *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (quoting *Benda v. Grand Lodge of the Int'l Ass'n of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978)).

The Plaintiff asserts he is likely to prevail on its claim of retaliation. The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or cause to be instituted any proceeding under [the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). The Ninth Circuit has held that "[t]o succeed in a retaliation claim, the plaintiff must demonstrate (1) that she was engaging in protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997).

Here, the Plaintiff asserts that by speaking with investigators with the Department of Labor, the employees were engaging in protected activity, and, as a result of these employees' cooperation, the Defendants retaliated against the employees by (1) calling Immigration and Citizenship Enforcement to report those who quit; (2) pressuring current employees to sign

compliance statements and lie to the investigators or else forfeit their substantial deposits; (3) offering employees bribes to leave Guam; (4) threatening the employees' families, and (5) contacting the employees' new employers. In support of these allegations, the Plaintiff has provided numerous declarations of Wage and Hour investigators and the written statement of Jian Zhu, a foreman at Acme.

First, the Defendants argue that the Plaintiff cannot show it will likely prevail on the retaliation claims since the bulk of Plaintiff's accusations are supported only by the hearsay statements of its investigators. In response, the Plaintiff asserts that it provided the declarations of its investigators instead of the actual H-2B employees who made complaints or cooperated in order to protect their identities and shield them from further abuse. *See* Reply at 6, ECF No. 44. However, if the court deems it necessary, the Plaintiff is willing to provide the court for *in camera* review the declarations from the former employees detailing the facts that would support the Plaintiff's motion. *See* Reply at 6, ECF No. 44, and Reply at 7, ECF No. 91.

"A motion for preliminary injunction must be supported by evidence that goes beyond the unverified allegations of the pleadings, but "the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Fid. Nat'l Title Ins. Co. v. Castle*, 2011 WL 5882878 at *3 (N.D. Cal. Nov. 23, 2011). *See also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may, however, consider hearsay in deciding whether to issue a preliminary injunction."). Therefore, it is proper for the court to consider the declarations by the Wage and Hour investigators instead of requiring the Plaintiff to produce the H-2B employees' statements.

Second, the Defendants absolutely deny the allegations that they retaliated against any of the employees. The Defendants' Sur-Opposition asserts "facts" which are completely different from the Plaintiff's version of the "facts." For example, page 5 of the Plaintiff's Reply (ECF No. 44) discusses Mr. Yu's alleged coercive tactic against Qin Long Sheng,[8] one of the H-2B

---

[8] Plaintiff refers to him as Mr. Sheng, but the Defendants refer to him in their Sur-Opposition as Mr. Qin. *See* Sur-Opp'n at 8-9, ECF No. 46. The court will adopt the Plaintiff's preference and refer to the individual as Mr. Sheng.

Page -10-

employees. According to the declaration of Wage and Hour Investigator Feng Wang,[9] the Plaintiff's Reply asserts that Mr. Yu threatened to report Mr. Sheng to the immigration authorities (ostensibly because Mr. Sheng complained to the Department of Labor), and Mr. Sheng was later detained by immigration officials. *See* Reply at 5, ECF No. 44. The Defendants disagree with these alleged "facts," and note that Mr. Yu contacted the Guam Department of Labor in July 2010 when Mr. Sheng had abandoned his employment after he was disciplined for sleeping on the job. *See* Paul Yu Second Decl. at ¶¶3-4, ECF No. 46-1. All of this occurred prior to the commencement of the Plaintiff's investigation in April 2011, and thus the Defendants maintain that the reporting and detention of Mr. Sheng to immigration officials could not have been an act of retaliation against Mr. Sheng since Mr. Sheng had not yet made complaints to the Department of Labor. The Defendants argue that after Mr. Sheng "was arrested by U.S. Immigration he invented the claim against the Defendants for unpaid wages as justification for why he had violated the terms of his H-2 visa by abandoning his employment." Sur-Opp'n at 9, ECF No. 46.

The Plaintiff also claims that Mr. Yu's retaliatory efforts continued when he offered to pay Mr. Sheng between $30,000 to $40,000 to drop his complaint. Reply at 5, ECF No. 44. The Defendants counter this allegation by stating that it was Mr. Sheng who solicited money from the Defendants to assist in making this litigation go away. *See* Sur-Opp'n at 8, ECF No. 46. According to the Defendants, as recently as May 2, 2013, Mr. Sheng left a message with Mr. Yu's wife (Qing Lu) offering to "disappear" if Mr. Yu gave him $30,000-$40,000. *See* Q. Lu Decl. at ¶¶2-4, ECF No. 46-2.

Despite these conflicting facts surrounding Mr. Sheng, the declarations of the Wage and Hour investigators and the written statement of Jian Zhu – Acme's own foreman – demonstrate that the Plaintiff is likely to succeed on the merits of the retaliation claim.

### 2. <u>Irreparable Harm</u>

The Plaintiff next argues that without a protective order enjoining further contact between

---

[9] *See* F. Wang Second Decl. at ¶¶11-18, ECF No. 45-2.

the Defendants and the H-2B employees, the Plaintiff will suffer irreparable harm. The Plaintiff notes that "[u]nchecked retaliation subverts the purpose of the FLSA" and "the resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010); *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938–39 (9th Cir.1987) ("[A]llegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss."). The Plaintiff contends that its ability to enforce the FLSA will be irreparably harmed in this case and hampered in future enforcement investigations if the Defendants are not restrained from their efforts to pressure and threaten the H-2B employees from asserting their rights. According to the declaration of one Wage and Hour investigator, Mr. Yu's coercive and threatening tactics have caused the Plaintiff to lose contact with at least one former employee, thus limiting the Plaintiff's ability to effectively prosecute this case. *See* F. Wang Decl. At ¶13, ECF No. 27-3. The Plaintiff asserts that without the protective order and injunction, the Defendants will be able to continue to "dissuade, discourage, bribe and threaten witnesses away." Mem. P.&A. Supp. Mot. for Protective Order at 12, ECF No. 27-1.

The Defendants, on the other hand, contend that all of the allegations of threats and coercion are old and occurred in 2012. The Defendants note that the Plaintiff waited almost one year from the filing of the Complaint to seek this preliminary injunction and the Plaintiff did not assert any continuing misconduct on the part of the Defendants.

However, the Plaintiff asserts that Mr. Yu took steps through 2012 to attempt to coerce the H-2B employees not to cooperate in this enforcement action, such as approaching these employees who were working for a new employer at their worksite and pressuring them to sign statements that the Defendants did not violate the FLSA. *See* F. Wang Second Decl. at ¶9, ECF No. 45-2. In October or November 2012, it is alleged that Mr. Yu's friend contacted at least one H-2B employee to pressure the former employee not to say anything about the wages and working conditions at Acme. *Id.* at ¶8. Additionally, in February 2013, Mr. Yu allegedly contacted some H-2B employees. *Id.*

///

This is more than simply a discovery dispute. Instead, the irreparable harm at issue here involves the Plaintiff's ability to enforce the FLSA. The Plaintiff has presented evidence that the allegedly retaliatory conduct at issue here has already intimidated the H-2B employees, making them unwilling to continue to cooperate with the Plaintiff's enforcement action. Thus, the irreparable harm element is met.

### 3. Balance of Equities and the Public Interest

The final two preliminary injunction factors "merge" when the government is a party. *Drakes Bay Oyster Co. V. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The Plaintiff states that the relief it seeks is only intended to ensure the Defendants comply with the law by refraining from taking any further action in retaliation against the H-2B employees who cooperated and are continuing to cooperate in this enforcement action.

The Defendants, however, argue that the public has an interest in fair trial. They assert that there will not be a fair trial if the Defendant are prevented from contacting the former employees, deposing them, or learning about what they told the investigators before the Complaint was filed. The Defendants argue that the injunction and protective order will only allow for a trial by ambush, which is not in the Defendants' or the public's interest, because the Defendants will be handicapped in preparing a defense of this case.

The court is not persuaded by the Defendants' arguments on this issue. As the court has already allowed in the Temporary Protective Order currently in place, the Defendants are free to depose any current or former employee about their conditions of employment at Acme, including hours worked and rate of pay. *See* ECF No. 31 at 3 (lines 19-21). However, the Defendants are not permitted to inquire into whether any current or former employee made complaints or spoke to the Department of Labor or the content of any such statement given to the Department of Labor. *Id.* at ¶¶1(b)-(d). Additionally, requiring Defendants to provide a Notice of Rights as set forth in the Temporary Protective Order will assist in ensuring the integrity of these judicial proceedings. Finally, restraining the Defendants from contacting the H-2B employees except through their attorneys and only for the purpose of arranging or taking depositions (as set forth in

¶3 of the Temporary Protective Order) will help ensure Defendants do not engage in any further action that may tend to be viewed as being coercive or threatening to the H-2B employees. Thus, the injunctive relief sought will not severely handicap the Defendants from conducting discovery and preparing a defense. There will be no trial by ambush.

The court finds that the public interest and the equities tip in the Plaintiff's favor. Having met all four elements, the court hereby grants the motion for preliminary injunction.

B. Protective Order

Under Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). There is a two-step analysis to determine whether the court may issue a protective order. First, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted" to establish good cause. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Second, "[i]f [the] court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id.* at 1211.

Based on the discussions above, the Plaintiff has shown good cause for the issuance of a protective order, and the balance of equities tips in favor of the protective order.

**Motion to Modify Protective Order and Injunctive Relief**

In the Plaintiff's second motion, it seeks to modify the Temporary Protective Order "to further ensure that these proceedings move forward fairly, allowing the workers to testify without fear of reprisal" from Mr. Yu or those acting on his behalf. Mot. to Modify Protective Order at 2, ECF No. 45. Accordingly, the Plaintiff requests that the Defendants and anyone acting on their behalf, *including their attorneys*, be prohibited from any contact with the H-2B employees. *Id.* With regard to future discovery involving the H-2B employees, the Plaintiff proposes that (1) depositions take place by written questions in an office of the court or other federal government facility; (2) the only persons present at the deposition will be the H-2B employee to be deposed and the court reporter; and (3) the Defendants serve the deposition notices upon the

Plaintiff, whose authorized representatives will make their best efforts to locate and serve the H-2B employees to be deposed. *Id.*

The Plaintiff believes these modifications to the existing Temporary Protective Order are necessary "in light of the ongoing evidence of retaliation, intimidation, and obstruction by Defendant Paul Yu." *Id.* Specifically, the Plaintiff states that Mr. Yu "flouted" the mandates of the Temporary Protective Order by "attend[ing] the deposition s of the H-2 Employees, who themselves did not attend the depositions."*Id.* at 6. The Plaintiff believed that Mr. Yu's presence at the depositions violated the Temporary Protective Order, however, counsel for the Defendants believed that Mr. Yu's presence was necessary. Mr. Dotts stated that he needed to have Mr. Yu present for the depositions of the former employees since Mr. Dotts had "no way of knowing if an answer given by the witness is truthful" and "what answers to explore further." M. Dotts Decl. at ¶3, ECF No. 37-2.

The Plaintiff argues that the requested modified conditions will not completely prevent the Defendants from engaging in discovery but only limits the methods by which the Defendants can conduct such discovery.

As the court discussed with the parties at oral arguments, there is concern that the type of limited discovery proposed by Plaintiff may not provide meaningful discovery to Defendants. More importantly, a deposition without the presence of Defendants and especially Defendants' counsel, may severely hamper the Defendants' ability to conduct and obtain discovery and ultimately prepare a defense. Accordingly, the court denies the Plaintiff's second motion.

## CONCLUSION

In deciding these motions the court has taken into consideration the responses by the parties to the court's questions during oral arguments. Based upon those responses, the court is satisfied that discovery through depositions will reasonably move forward without further intervention by the court.

Having granted Plaintiff's Motion for Protective Order and Injunctive Relief, the court reaffirms its Order of March 13, 2013. The Defendants are ordered to comply with the said Order throughout the duration of this litigation.

Having further granted Plaintiff's Motion for Protective Order and Injunctive Relief, the court finds the protections afforded therein do not warrant the further protections sought by Plaintiff in its Motion to Modify Protective Order and Injunctive Relief, and accordingly this second motion is denied.

IT IS SO ORDERED.



/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Aug 11, 2014